UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

VSB 305, LLC,
a Florida Limited Liability Company;
and JOHANNA SEGURA, an
individual,

      Plaintiffs,

v..

SKY GROUP USA, LLC., a               <u>DEMAND FOR JURY TRIAL</u>
Florida Limited Liability Company;
and EFRAIN BETANCOURT an
individual,

      Defendants.

_____/

## <u>COMPLAINT AND DEMAND FOR JURY TRIAL</u>

The above-captioned Plaintiffs file this Complaint and Demand for Jury Trial, and sue the

above-captioned Defendants in this matter, and in support thereof, state as follows:

### <u>NATURE OF THE CASE</u>

1.     This is an action that arises out of Defendants' fraudulent scheme to promote and

sell unregistered securities in the form of promissory notes to fund Defendants' business of

offering payday loans to the general public.

2.     More specifically, Plaintiffs' claims are based on Defendant Sky Group USA,

LLC., and Defendant Efrain Betancourt's misconduct in connection with certain promissory notes

issued to Plaintiffs totaling Two Hundred Thousand U.S. Dollars ($200,000.00) (collectively the

"Promissory Notes" or "Loan Agreements").

3.      Plaintiffs bring this action pursuant to §§ 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder and the Florida Securities and Investor Protection Act (the "Florida Act")

## **INTRODUCTION**

4.      This action arises as the result of a three year long unregistered securities offering conducted by Defendant Sky Group USA, LLC, ("Sky Group") and Defendant Efrain Betancourt ("Betancourt").

5.      From January 2016 to the present date, Sky Group USA, LLC, a private company, fraudulently raised by means of an unregistered security and by use of unregistered brokers, in excess of 200 Million U.S. Dollars from more than 300 investors, to fund its business of offering payday loans, merchant cash advances, auto loans, consumer and personal instalment loans.

6.      Under the direction of its Chief Executive Officer, Efrain Betancourt, Sky Group used a network of unregistered advisors, brokers and sales agents – which were paid commissions – to offer and sell unregistered securities in the form of promissory notes to investors in Florida.[1]

7.       Sky Group through its marketing materials, presentations, distributed by Sky Group sales agents, promised investors a high-return (48% annually) at a low-risk investment in which Sky Group would use investment money to make short-term cash advances called payday loans ("Payday Loan").[2]

---

[1] Efrain Betancourt is also listed as Sky Group's Manager with the Florida Secretary of State Division of Corporations.
[2] A payday lender provides a short-term loan in exchange for a person's check and a fee. The lender agrees to hold the check for a period of time before depositing it.

8.     Sky Group touted having strict internal policies to assure compliance, top technology and verification software to allow for the highest underwriting standards, and a highly recognized legal team of experts and external auditors to make sure on a daily basis that they are compliant with the licensing and regulatory landscape in every state where Sky Group is conducting its Payday Loan transactions.

9.     Sky Group also assured investors (including Plaintiffs) that the funds received by its investors were to be used for the sole purpose of portfolio financing of specific Payday Loans, and the principal balance would not be used for payment to members or any other expenses that are not related to Sky Group's portfolio financing.

10.     Upon information and belief, and contrary to Sky Group and Betancourt's assurances, Sky Group and Betancourt used substantial investor funds for purposes other than the cash advances, including paying for operating expenses and compensation to Sky Group's executives, including Betancourt, along with payment of commissions to its unregistered advisors, brokers and sales agents.

11.     By Sky Group and Betancourt's own admission, Sky Group is experiencing a shortfall of investor funds of approximately $65 Million U.S. Dollars that should be in Sky Group's accounts and/or available for the intended Payday Loans.

12.     As a result, Sky Group has been unable to pay Plaintiffs and all other investors, further to the Installment Payment Scheduled.

13.     Sky Group (now negative $65 Million) has implemented a damage control strategy, by contacting investors (including Plaintiffs) assuring them that Sky Group's financial situation is salvageable. In doing so, Sky Group has circulated invitations to its investors (including Plaintiffs) to attend a group meeting with Sky Group's CEO and other Sky Group

executives.

14.     One such investor event recently took place on February 6, 2020 at the SLS Hotel on Brickell Avenue, Miami. During this meeting – which was attended by more than 200 investors including Plaintiffs – Sky Group and Betancourt delivered an elaborate presentation, assuring its investors that Sky Group was implementing a restructuring plan and that 1% of the capital invested (approximately $3,000,000.00) would be returned to the investors by March of 2020.

15.     This in turn assumes that the sum of investor funds may surpass 300 Million U.S. Dollars.

16.     During its February 6, 2020 presentation at the SLS, Sky Group and Betancourt blamed much of Sky Group's financial misfortune on certain state regulatory actions (including an action in the State of Washington, which apparently snowballed into fines and penalties. Betancourt also blamed other state administrative actions, a high incidence of customer loan defaults.

17.     As a result of a high incidence of customer defaults and customer complaints, Sky Group was barred from using automated clearing house (ACH) for electronic funds transfers - managed by the National Automated Clearing House Association (NACHA).

18.     Sky Group's ability to use the ACH system is necessary to allow automatic electronic access to a borrower's account in order to repay a payday loan. Without access to the ACH system, Sky Group is unable to get repaid from payday loans obtained online throughout the U.S.

19.     On or about January of 2020, Sky Group also circulated presentation invitations to explain its current dilemma to other Sky Group investors. Said meetings took place in Caracas,

Venezuela and Lisbon, Portugal.

20.      Defendant Betancourt founded Sky Group as the limited liability's manager (and held himself as its majority member), and has since Sky Group's formation and commencement of operations to the present day, functioned as its Chief Executive Officer.

21.      By virtue of his position as Sky Group's highest executive position, Betancourt maintains sole operational control over Sky Group, makes all key management decisions, closely monitors raising of investor funds, and provides guidance and sales strategies to its team of unregistered sales agents.

## SKY GROUP'S SALES AGENTS

22.      Sky Group regularly provided sales material and training to its sales agents for use in marketing the investment opportunity to prospective investors such as Plaintiffs. This information included financial graphs, showing Sky Group's historical investment returns, and comparing Sky Group's high returns to investment returns in other industries. Sales agents referenced and used the investment materials in soliciting investors.

23.      Sky Group and Betancourt actively recruited unlicensed and unregistered sales agents from all walks of life. One such sales agent was James Tahhan. James Tahhan, who is known as "Chef James" is a celebrity chef and television personality. James Tahhan is currently the co-host of the morning show "Un Nuevo Dia" which airs on the Telemundo Network. As a television personality, James Tahhan has a following on Instagram of over 449k followers, and access to a countless number of prospective Sky Group investors.[3]

24.      James Tahhan first pitched the Sky Group investment opportunity to Plaintiff

---

[3] According to a statement dated 6/23/15 by Eric Bustillo, Director SEC's Miami Regional Office "The broker-dealer registration requirements are critical safeguards for maintaining the integrity of our securities market…"

VSB's manager Victor Segura in late 2018.

25.     At all times material to these allegations, James Tahhan represented to Plaintiffs that he was a sales broker and employed by Sky Group.

26.     In such capacity, James Tahhan was tasked by Sky Group to participate and facilitate discussion and negotiations between Sky Group and Plaintiffs.

27.     In fact, Plaintiffs later discovered that James Tahhan was being compensated by Sky Group on a commission basis according to the sum invested by Plaintiffs. James Tahhan commission is 12% of the total investment during the first year, 9% the second year and 6% the third year.

28.     In addition, Sky Group compensates its department managers with a 1% annual bonus of total investments generated from their respective team of sales agents.

29.     James Tahhan in his capacity as a Sky Group sales agent, represented that Sky Group offered better returns than conventional investment instruments, and was a safe, short-term investment alternative to more risky stock market investments and a volatile real estate market.

30.     James Tahhan further represented that Sky Group had advanced technology and verification software to allow for the highest underwriting standards, and a highly recognized legal team of experts and external auditors to make sure on a daily basis that they are compliant with the licensing and regulatory landscape in every state where Sky Group is conducting its Payday Loan transactions.

31.     James Tahhan told Mr. Segura and that he had invested a considerable amount of his own money, and had been promptly paid by Sky Group.

32.     Sometime in early January 2019, James Tahhan and Victor Segura exchanged text messages via WhatsApp discussing the Sky Group investment. In the course of this exchange, Mr. Tahhan stated that the Sky Group investment opportunity was limited to a certain number of lucky investors and a limited investment amount.

33.     James Tahhan later communicated that he had convinced Betancourt to open the investment opportunity to Victor Segura, with the caveat that he could only invest $90,000.00 in the first round. This was intended to manipulate Victor Segura's ego by making him believe that only a special few could participate in this fortuitous investment opportunity.

34.     During numerous telephone conversations and written chats, James Tahhan touted Sky Group's 10 year track record; and that he had personally confirmed a track record of 48% annual investment returns from speaking to Betancourt and other Sky Group sales agents and brokers.

35.      During a WhatsApp chat on December 1, 2018, James Tahhan sent Victor Segura a real time photograph of a Sky Group sales agent meeting attended by James Tahhan – and referring to the investment stated: "Estoy en una conferencia de Sky. La cosa pinta muy bien" – which in translated means, "I am at a Sky conference. Things look very good."

36.     James Tahhan also assured Victor Segura that Sky Group much like a banking institution, had an extremely rigid compliance program and that its financials were audited by an external accounting firm which validates and validates each transaction; which is then reported to the State of Florida and certain federal agencies which allegedly oversee, regulate and monitor Sky Group's business operations.

37.     James Tahhan in his capacity as a Sky Group sales agent, also assured Victor Segura that his investments were 100% guaranteed by adequate capital reserves, and there was no

risk of losing his money.

38.     These representations by James Tahhan as a sales agent for Sky Group, were intended and did in fact serve to gain Victor Segura's confidence in Sky Group's investment abilities and expertise.

## **THE PARTIES**

39.     Plaintiff Johanna Segura ("Segura") is a resident of Miami-Dade County, Florida.

40.     Plaintiff VSB 305, LLC ("VSB") is a Florida limited liability company with its principle address at 941 NW 104th Avenue, Miami, Florida.

41.     Victor Segura is Plaintiff VSB's managing member and likewise was the point of contact and decision maker for both VSB and his daughter, Johanna Segura. Moreover, the two promissory notes were funded from VSB's account at Chase Bank.

42.     Defendant Sky Group USA LLC, d/b/a Sky Cash USA ("Sky Group") is a Florida limited liability company with its principle address at 11900 Biscayne Boulevard, Suite 501, Miami, Florida.

43.     Defendant Efrain Betancourt ("Betancourt") is an individual and serves as Sky Group's Chief Executive Officer, and Managing Member.

44.     Defendant Sky Group is the maker of the underlying Promissory Notes which form the basis of this action.

45.     Defendant Betancourt executed the underlying Loan Agreement and Promissory Notes which form the basis of this action. (Attached hereto as Composite **Exhibit "A"**)

## **JURISDICTION AND VENUE**

46.     The claims asserted in this complaint arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated under Section 10(b)

by the SEC, 17 C.F.R. § 240.10b-5. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1337 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

47.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Sky Group is headquartered and transacts business in Miami, Florida, and a substantial part of the events giving rise to this litigation took place in this District, including the dissemination of many of the false statements at issue

## **DEFENDANTS' SCHEME TO DEFRAUD**

48.     From an indeterminate time to the present, the Defendants Sky Group and Betancourt offered and sold its investment to Plaintiffs and other investors, through the use of fraudulent misrepresentations and material omissions of fact in connection with the sale of securities.

49.     The securities were offered and sold using an instrument entitled "Loan Agreement and Promissory Note" ("Loan Agreement").

50.     The Loan Agreement termed the investor a "Lender" and identified Sky Group as the "Borrower." The Loan Agreement specifically stated that an investor was providing money to Sky Group for the sole purpose of "**portfolio financing**" and associated cost by Sky Group USA, LLC and any of its partner or affiliate corporations; and that the principal balance shall not be used for payment of members or any other expense that are not related to the portfolio financing of the corporation. (referring to Sky Group).

51.     Upon information and belief, and after Sky Group received Plaintiff Segura's investment, the funds were pooled and commingled together in non-segregated accounts controlled by Sky Group, and partially used by related companies to fund loan transactions in numerous other states.

52.     Notwithstanding the representation that the investment would be used only for portfolio financing; Plaintiffs and other investors had no say in how or to whom Sky Group could use their funds.

53.     Plaintiffs did not have management authority, nor access to specific information allowing them to manage the so-called portfolio financing. Defendant Sky Group and Defendant Betancourt as Sky Group's Chief Executive Officer had absolute and complete discretion on whether and when to use the investor's funds.

54.     At no time was Plaintiff Segura and Plaintiff VSB provided a prospectus regarding the investment with Sky Group and much less any writing containing the type of information normally provided for a registered securities offering.[4]

55.     Notwithstanding the lack of a prospectus, Plaintiff Segura and Plaintiff VSB did not have the requisite knowledge and experience in finance and business matters (particularly with regards to the highly complex and regulated business of providing Payday Loans) to be "sophisticated investors" and able to evaluate the risks and merits of the investment.

## MATERIAL MISREPRESENTATIONS AND OMMISSIONS REGARDING THE INVESTMENT

56.     Upon information and belief, at the time Plaintiffs' provided their respective funding, Sky Group failed to disclose that it was at that time heavily indebted and had defaulted with regard to other loan obligations to other undisclosed investors.

57.     Defendants Sky Group and Betancourt failed to provide Plaintiffs with Sky Group's financial statements, which if provided, would have evidenced Sky Group's failed

---

[4] Information concerning the Payday Loan platform, statistical information regarding financial risk, general risk factors, questions and answers, legal matters, etc.

business model and its inability to comply with its financial obligations.

58.    Sky Group failed to disclose that it was in the midst of an investigation by the State of Washington for unlicensed lending and predatory lending activities related to loans made to at least 543 Washington state consumers, and such activity could and did in fact result in a Consent Order in which Sky Group was required to pay restitution, and fines and investigation costs.

59.    At the time of executing the Loan Agreements with Plaintiffs, Sky Group and its CEO Betancourt, were aware that they could not continue to generate sufficient income from Sky Group's operations to pay the inflated interest payments as they came due and even more improbable the ability to pay the principle amounts due at maturity from the loan agreements generated to repay previous investors.

60.    Sky Group's statements by and through its sales agent Mr. Tahhan were materially false and/or misleading because they misrepresented that Sky Group sufficient reserves of capital to protect Plaintiffs' investment.

61.    Sky Group's promise of 4% per month are wholly unsubstantiated, unachievable and fraudulent. Sky Group did not have the operating history to support these wildly optimistic projections, and indeed no long after Sky Group's execution of the Promissory Notes, fell behind in its monthly returns promised to Plaintiffs and other investors.

62.    Mr. Tahhan's statements were materially false and/or misleading because they misrepresented and/or failed to disclose that Payday Loans are inherently risky and have a default rate that is statistically ten times higher than a conventional loan.

63.    Defendants Sky Group and Betancourt failed to disclose the risks associated with Payday Loans, which by its very nature as an unsecured obligation are inherently risky

64.     Defendants Sky Group and Betancourt failed to disclose that a prospective payday loan borrower could, and in many cases did, reverse, cancel or revoke the payment authorization in favor of Sky Group and default on his/her obligation.

65.     Defendants Sky Group and Betancourt failed to disclose that Payday Loans are unsecured and subject to being discharged by bankruptcy and therefore expose Plaintiffs' investment to loss.

66.     Defendants Sky Group and Betancourt omitted to provide Plaintiffs with the following regarding Sky Group: (i) an executive summary; (ii) management summaries; (iii) current capitalization; (iv) detailed description of its business operation; and (v) risks related to the company, the industry and the security being sold.

67.     Defendants Sky Group and Betancourt failed to disclose the broker fees and commissions structure paid to its sales agents, and in Plaintiffs case the commission paid to James Tahhan.

68.     Sky Group's statements by and through its sales agent James Tahhan were materially false and/or misleading because they misrepresented that Sky Group was licensed to conduct payday loan transaction in every state that it was providing said loans.  In fact, the State of Washington Department of Financial Institutions Division of Consumer Services and Sky Group entered into Consent Order on June 18, 2019, which resulted from Sky Group's failure to obtain the requisite license to transact payday loans in the State of Washington.

69.     In fact, Sky Group was also a party defendant to a lawsuit filed in the Eastern District Court of Virginia, alleging unlicensed and predatory lending practices in the State of Virginia.

70.     Enticed by Defendants fabricated financial projections, and promises of a fail-safe

investment, Plaintiffs delivered the following sums of monies provided in the corresponding Loan Agreements.

## DEFENDANT SKY GROUP'S ARBITRATION PROVISION
## DOES NOT APPLY TORTIOUS ACTS

71.     The Loan Agreement provides that "If Borrower and/or Lender Shall [sic] default in performance of any of his obligations under this Agreement any disputes shall be settled by binding arbitration in Miami, Florida in accordance with the rules of the American Arbitration Association…" (Ex. "A" Section IX).

72.     Plaintiffs do not dispute that they are subject to the terms of the arbitration provision. Plaintiffs do however dispute that the tortious acts, including violations of the Exchange Act and Florida Act, do not fall within the scope of the arbitration provision.

73.     The language "If Borrower and/or Lender Shall [sic] default in performance of any of his obligations under this Agreement any disputes…" imposes a limitation on the reach of Sky Group's arbitration clause.

74.     The tortious acts and/or securities violations herein alleged were not immediately foreseeable by Plaintiff, nor resulted from a "default in performance of any if his obligations" in each Plaintiff's respective Loan Agreement and Promissory Note.

75.     Had Sky Group wanted a broader arbitration provision, to include the arbitrability of claims under state or federal securities law, it should have left the scope of it at "any and all disputes, claims, or controversies whatsoever" instead of "default in performance of his obligations under this Agreement."

76.     To broaden the scope of the arbitration provision to also include Defendants' tortious conduct and/or violation of state and federal securities law; would be contrary to the intent of the parties.

**COUNT I**
**VIOLATION OF THE FLORIDA SECURITIES AND INVESTOR**
**PROTECTION ACT**
**(Against all Defendants)**

77.      Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

78.      This is a claim for multiple violations against all Defendants under Florida Securities and Investor Protection Act ("FSIPA"), Fla.Stat. §517.011 et. seq.

79.      The Promissory Notes constitute a "security" pursuant to Fla.Stat. §517.021(21)(a), because it is a note, an evidence of indebtedness, and/or an investment contract.

80.      The Promissory Notes which constitutes an "investment contract" for the enterprise, and was led to expect profits derived solely from the efforts of the promotor or third party, namely Sky Group.

81.      As set forth in paragraphs 1-76 herein, Defendants Sky Group and Betancourt, implemented a plan and undertook unlawful acts to defraud investors, such as Plaintiffs, in connection with the sale securities.

82.      Plaintiffs were in fact defrauded, upon investing and delivering funds to Sky Group, relying upon information communicated through Sky Group's unregistered sales agent who used false and misleading statements and omissions of fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

83.      Further, Florida Statutes 517.301, declares that it is unlawful for a person to knowingly and willfully falsify, conceal, or cover up, by any trick, scheme, or device, a material fact, make any false, fictitious, or fraudulent statement or representation.

84.      As a result, Defendants Sky Group and Betancourt, orchestrated an investment

scheme with the intent to deceive and defraud Plaintiffs, by among other acts, misrepresenting to Plaintiffs Sky Group's liabilities and projected profits, which Sky Group and Betancourt knew to be false.

85.     As a direct and proximate result of Defendants' untrue statements and material omissions and their reasonable reliance thereupon, Plaintiffs has suffered consequential damages, including the loss of use of the funds invested, the loss of interest thereupon, the loss of the principal amount invested.

WHEREFORE, Plaintiffs demand judgment against Defendants Sky Group and Betancourt, jointly and severally, for compensatory damages, attorneys' fees pursuant to Fla.Stat. §517.211(6), and costs, interest, and such further relief as this Court deems just and proper.

**COUNT II**
**VIOLATION OF THE FLORIDA SECURITIES AND INVESTOR**
**PROTECTION ACT SELLING AN UNREGISTERED SECURITY**
**(Against all Defendants)**

86.     Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

87.     This is a claim for violation against all Defendants under the Florida Securities and Investor Protection Act (FSIPA), Fla.Stat. §517.07 et.seq.

88.     The Promissory Notes constitute a "security" pursuant to Fla.Stat. §517.021(21)(a), because it is a note, an evidence of indebtedness, and/or an investment contract.

89.     It is unlawful and a violation Fla.Stat. §517.07 et.seq. for any person to sell or offer to sell a security unless the security is exempt from registration, is sold in an exempt transaction or is a federal covered security, or is registered pursuant to Fla.Stat §517.07 et.seq.

90.     No securities that are required to be registered shall be sold or offered for sale

within this state unless such securities have been registered and unless prior to each sale the purchaser is furnished with a prospectus meeting the requirements of rules adopted by the Florida Office of Financial Services Commission ("Commission").

91.    Defendants offered to sell and in fact sold, the Promissory Notes to Plaintiffs in Florida.

92.    The Promissory Notes, are not registered as required by Florida law.

93.    The Promissory Notes, are not exempt from registration.

94.    Defendants failed to provide Plaintiffs with a prospectus meeting the requirements provided by the Commission.

WHEREFORE, Plaintiffs demand judgment against Defendants for return of all monies delivered to Defendants, interest, attorneys' fees pursuant to Fla. Stat. §517.211(6) and such further relief as this Court deems just and proper.

**COUNT III**
**FRAUDULENT MISREPRESENTATION IN CONNECTION WITH**
**<u>OFFERING THE PROMISSORY NOTE</u>**
**(Against all Defendants)**

95.    Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

96.    This is a claim for fraudulent misrepresentation pursuant to Florida common law.

97.    As fully detailed in the allegations incorporated herein, Defendants Sky Group and Betancourt, individually and in his capacity as Sky Group's managing members and CEO, made untrue statements of fact to Plaintiffs and omitted other material facts necessary to make their affirmative statements not misleading.

98.    In so doing, Defendants Sky Group and Betancourt acted deliberately and with

the intent to deceive, manipulate and defraud Plaintiffs, and made the subject misrepresentations and material omissions with the intent that Plaintiffs rely on said representations and material omissions.

99.     The untrue statements of fact and material misrepresentations in question are set forth herein.

100.    Plaintiffs reasonably relied to their detriment on the representations and omissions, but for which Plaintiffs would never had invested in Sky Group or agreed to enter into the respective Promissory Notes.

101.    Defendants' actions were intentional, wanton, malicious, and made with the intent to injure Plaintiffs or with reckless disregard for Plaintiffs' lawful rights.

102.    As a direct and proximate result of Defendants' untrue statements and material omissions and Plaintiffs' reasonable reliance thereupon, Plaintiffs' suffered consequential damages, including the loss of use of the funds invested, the loss of interest thereupon, the loss of the principal amount invested.

WHEREFORE, Plaintiffs' demand judgment against Defendants Sky Group and Betancourt for compensatory damages, punitive damages, costs, attorney's fees, prejudgment interest, post-judgment interest, and such further relief as this Court deems just and proper.

### COUNT IV
### CONSPIRACY TO DEFRAUD
### (Against Betancourt)

103.    Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

104.    This is a claim for civil conspiracy to defraud pursuant to Florida common law.

105.    As fully detailed in the incorporated allegations, Defendant Betancourt and Sky

Group sales agents agreed and conspired to act in concert and combination, and did in fact act in concert and combination to defraud Plaintiffs out of their monies.

106.    In so doing, Defendant Betancourt has committed overt acts, including but not limited to the making of false statements and material omissions with the intent to deceive, manipulate and defraud Plaintiffs.

107.    As a result of the conspiracy and the overt acts taken by the co-conspirators, Plaintiff have suffered damages.

108.    Defendant Betancourt's actions were intentional, wanton, malicious, and made with the intent to injure Plaintiffs or with reckless disregard for their lawful rights.

109.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered pecuniary damages, including the loss of use of the funds invested, the loss of interest thereupon, the loss of the principal amount invested.

WHEREFORE, Plaintiffs demand judgment against Defendant Betancourt, for compensatory damages, punitive damages, costs, attorney's fees, prejudgment interest, post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT V
## BREACH OF THE PROMMISORY NOTES
### (In the Alternative)
### (Against Sky Group)

110.    Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

111.    This is an action for breach of contract against Sky Group for violating its obligations under the Promissory Notes.

112.    The Promissory Notes constitute binding contracts pursuant to Florida law, in that

there was an offer, an acceptance, consideration given by both sides, and a definitive agreement as to all essential terms of the underlying bargain.

113.    The Promissory Notes obligate Sky Group to pay interest bearing a rate of 48% per annum, payable monthly.

114.    On the dates, applicable to due date for payment of interest, Sky Group was contractually obligated to repay said interest.

115.    Despite the fact that Plaintiffs fully complied with their obligations under the Promissory Notes by loaning Sky Group the monies corresponding to each individual Plaintiff, Sky Group has materially breached its corresponding obligations by failing to the pay the interest payments as required by the Promissory Notes.

116.    As a result of Sky Group's breaches of the Promissory Notes, Plaintiffs have suffered pecuniary damages.

117.    Pursuant to terms of Promissory Notes, Plaintiffs are entitled to an award of attorneys' fees and costs incurred as a result of Sky Group's breaches of the Promissory Notes.

WHEREFORE, Plaintiffs demands judgment against Defendant Sky Group for compensatory damages, attorneys' fees, costs, prejudgment interest, post-judgment interest, and for such further relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT AND RULE 10b-5
### (Against all Defendants)

118.    Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

119.    This is a claim for multiple violations against all Defendants under Section 10(b) of the Exchange Act and Rule 10b-(5) promulgated thereunder.

120.     The Promissory Notes constitute a "security" pursuant to the Exchange Act, because it was intended to raise money for Sky Group's business use and an expectation on behalf of Plaintiffs to make a profit.

121.     As set forth in paragraphs 1-76 herein, Defendants Sky Group and Betancourt, individually and in concert, directly and/or indirectly, by the use, means or instrumentality of interstate commerce, made untrue statements of material fact and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

122.     All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

123.     Defendant Betancourt's primary liability, and controlling person liability, arises from the following facts: (i) Betancourt coached and instructed Sky Group's team of sales agents and furthermore provided the proverbial road map containing the misrepresentations that the investment was safe, secure, risk free and guaranteed high yields of 48% returns per annum; (ii) Betancourt was Sky Group's Chief Executive Officer, Manager and Member during the time and through the time of offering the securities (Loan Agreement) to Plaintiffs; (iii) Betancourt, by virtue of his responsibilities and activities as Sky Groups Chief Executive Officer was privy to and participated in the creation and development of marketing material and strategies to lure investors such as Plaintiffs; and (iv) Betancourt was aware and moreover actively participated with other Sky Group executives, such as its Director of Operations Carlos Pingarron.

124.     Defendants had actual knowledge of the misrepresentation and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

125.    Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly for purpose and effect of concealing from investors the fact that Payday Loans are high risk unsecured investments, and that Sky Group's business model relied on charging excessive interest rates, which depending on the law of a specific state, may be deemed usurious and unenforceable. This is now evident by Sky Group's present predicament of losses which exceeded 68 Million U.S. Dollars as of February of this year.

126.    At the time of said misrepresentation and/or omissions, Plaintiffs were ignorant of their falsity and believed them to be true.

127.    Had Plaintiffs known the truth regarding Sky Group's liabilities and the high risk nature of Payday Loans, Plaintiffs would not have invested or otherwise acquired Sky Group's promissory notes.

128.    As a direct and proximate result of Defendants' untrue statements and material omissions and their reasonable reliance thereupon, Plaintiffs damages, including the loss of use of the funds invested, the loss of interest thereupon, the loss of the principal amount invested.

WHEREFORE, Plaintiffs demand judgment against Defendants Sky Group and Betancourt, jointly and severally for damages, interest, and costs of this action and such further relief as this Court deems just and proper pursuant to Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

## COUNT VII
## VIOLATION OF SECTION 20(a) OF THE EXCHANGE ACT
### (Against Betancourt)

129.    Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs 1-76 of the Complaint, as though fully set forth herein.

130.    Defendant Betancourt's primary liability, and controlling person liability, arises

from the following facts: (i) Betancourt coached and instructed Sky Group's team of sales agents and furthermore provided the proverbial road map containing the misrepresentations that the investment was safe, secure, risk free and guaranteed high yields of 48% returns per annum; (ii) Betancourt was Sky Group's Chief Executive Officer, Manager and Member during the time and through the time of offering the securities (Loan Agreement) to Plaintiffs; (iii) Betancourt, by virtue of his responsibilities and activities as Sky Groups Chief Executive Officer was privy to and participated in the creation and development of marketing material and strategies to lure investors such as Plaintiffs; and (iv) Betancourt was aware and moreover actively participated with other Sky Group executives, such as its Director of Operations Carlos Pingarron, along with conducting training sessions with his team of sales agents.

131.   Betancourt in his capacity as the highest level executive had actual knowledge of the misrepresentation and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that he failed to ascertain and to disclose such facts, even though such facts were available to him.

132.   As set forth above, Defendants each violated Section 10(b) of the Exchange Act and Rule 10b-(5) promulgated thereunder, buy their acts and/or omissions as alleged in this Complaint. By virtue of his position as a controlling person, Betancourt is liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs suffered damages in connection with their investment with Sky Group.

WHEREFORE, Plaintiffs demand judgment against Defendants Sky Group and Betancourt, jointly and severally for damages, interest, and costs of this action and such further relief as this Court deems just and proper pursuant to Section 10(b) and Section 20 of the Exchange Act and Rule 10b-5 promulgated thereunder.

## DEMAND FOR JURY TRIAL

Plaintiffs seek and demands a trial by jury on all triable issues in this matter.

Respectfully submitted on this 18th of May, 2020.

**Vazquez & Associates**
Attorney for Plaintiffs
1111 Brickell Avenue
Suite 1550
Miami, Florida 33131

By: **/s/ Gerardo Vazquez**
Gerardo Vazquez, Esq.
Florida Bar No.:0006904
Email: gv@gvazquez.com
By**:/s/ Steven Herzberg**
Steven B. Herzberg, Esq.
Email: sh@gvazquez.com
Fla. Bar No.: 111541
Tel: 305.371.8064
Fax: 305.371.4967